[Civil No. 3358.   Filed May 3, 1933.]

[21 Pac. (2d) 924.]

JAMES B. SAYERS, Plaintiff, v. W. M. COX, State Treasurer, Defendant.

Mr. J. Irvin Burk (Mr. L. C. McNabb, of Counsel), for Plaintiff.

Mr. Arthur T. La Prade, Attorney General, and Mr. James R. McDougall and Mr. K. Berry Peterson, Assistant Attorneys General, for Defendant.

RODGERS, Superior Judge.—James B. Sayers, a member of the eleventh state legislature, representing the sixth legislative district of Maricopa county,

filed in this court an original petition for a writ of *mandamus,* directed to W. M. Cox, as treasurer of the state of Arizona, praying that the state treasurer be, by this court, ordered to pay to the plaintiff the amount of a certain state warrant issued to him by the state auditor on the ninth day of March, 1933, for the purpose of compensating him to the extent of $32 for his services as a member of the legislature.

Plaintiff presented his salary warrant, here involved, to the defendant, W. M. Cox, as state treasurer, on the thirteenth day of April, 1933, and demanded immediate payment of the warrant in lawful money of the United States or by a negotiable bank check, payable on demand. The defendant refused payment for the reasons alleged and set forth in paragraph IV of his return and answer, duly filed herein, which paragraph reads as follows:

"Further answering said alternative writ of *mandamus* and the application therefor, defendant alleges that, on the 13th day of April, 1933, there was in the General Fund of the State of Arizona, a sum of money amounting to approximately $350,000.00 and that prior to the presentation of plaintiff's warrant on the 13th day of April, 1933, there had been presented to defendant for payment warrants payable to the persons named thereon, regularly issued by the Auditor of the State of Arizona and drawn on the General Fund of the State, for various and sundry purposes such as the expenses for the operation of the State Departments and salaries for officers and employees, amounting to approximately Two Million Five Hundred Thousand and No/100 (2,500,000.00) Dollars; that said Two Million Five Hundred Thousand and No/100 ($2,500,000.00) Dollars worth of warrants presented as aforesaid had been refused immediate payment for the reason that there were not sufficient funds in the General Fund of the State to pay the same; that in the manner required by law, the defendant stamped upon each of the warrants constituting said sum of Two Million Five Hundred Thousand and No/100 (2,500,000.00) Dollars, the date

of its presentation and caused the same to be registered in a book kept for that purpose; that the warrant presented by the plaintiff on the 13th day of April, 1933, could not be paid by defendant as demanded for the reason that all other warrants presented prior to the plaintiff's were due and payable, in the order of their presentation, out of the General Fund of the State and, therefore, there were no funds available with which plaintiff's warrant could be paid.''

Plaintiff alleges in his petition that it was the plain duty of the defendant to comply with his demand for payment of his warrant and that the refusal of the defendant to pay same was without just cause or lawful excuse.

An alternative writ of *mandamus* was granted upon the application of plaintiff, to which the defendant has filed a demurrer, and a return and answer, and the case is, therefore, submitted upon issue thus joined.

It is the contention of plaintiff that his right to the relief here sought finds support and justification in the provisions of sections 4876 and 4877 of chapter 111 of the 1928 Revised Code of Arizona, as amended by Laws of 1931, chapter 54, which sections read as follows:

"4876. *Semi-Monthly Wage Payment; Notice; Violation; Penalty.* The state of Arizona, every department and institution of the state, every county and municipal corporation within the state, every contractor (whether individual, firm, partnership, association or corporation) employed under contract by the state, or by any of said departments, institutions, counties or municipal corporations, and every company or corporation doing business in the state, shall designate regular days not more than sixteen days apart as days fixed for the payment of wages to the employees thereof, and shall post and maintain notices, printed or written, in plain type or script, in at least two conspicuous places where said notices

can be seen by said employees as they go to and from their work, setting forth said days as 'pay days,' and the state, and every such department, institution, corporation or individual shall pay on each of said days to its or his employees in lawful money of the United States, or in negotiable bank checks, payable on demand, of the date of said day, all wages due said employees up to such pay day, except that said state, department, institution, corporation, or individual may withhold wages for not more than five days labor due any employee remaining in the service thereof.

"Every contractor mentioned herein, and every corporation (except municipal corporations) violating any of the provisions hereof, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be punished by a fine of not less than fifty nor more than five hundred dollars for each offense."

"4877. *Payment of Wages; Violations; Penalty.* Whenever an employee quits the service, or is discharged therefrom, he shall be paid whatever wages are due him, in lawful money of the United States, or by check of even date, on a bank, and said wages shall be paid at once. Every employer, including the state and its political subdivisions, shall pay any wages or compensation due an employee in lawful money of the United States, or negotiable bank check payable on demand, and dated not later than the day upon which said check is given, said check to be drawn upon some bank or banker located and carrying on business in this state, and not otherwise. Any person violating this section shall be guilty of a misdemeanor."

Since the entire case of plaintiff is made to rest absolutely upon the above sections, a construction and interpretation of those sections and a reference to other sections of the statute applicable to the proposition in controversy is necessary to a proper determination of the question here presented.

We are of the opinion that by virtue of no logical rule of statutory construction, nor by any reasonable interpretation, can the sections referred to and herein set forth be construed to apply to public officers that have their being and existence by reason of direct

constitutional or statutory provisions. On the contrary, it is perfectly obvious that sections 4876 and 4877 apply exclusively to those who serve the state, the various institutions and departments of the state, the counties, and municipal corporations within the state, as well as every contractor (whether individual, firm, partnership, association or corporation) under the authorization, and by virtue of, an express contractual relation, existing between the various employers enumerated in the statute, and the employee. It is readily apparent that sections 4876 and 4877, as amended, provide for a pay day for persons working for the state and its departments and institutions as well as all individuals, corporations, firms, partnerships and associations, counties and municipal corporations therein designated, under contract, and not for officers or employees whose salaries or wages are fixed by law. Section 2799 of chapter 65 of the 1928 Revised Code of Arizona provides when public officers shall be paid in the following language:

"*Legal Salary Only to be Received and in Full, Payable Semi-Monthly.* The salaries provided in this chapter shall be in full compensation for all services rendered by any officer, deputy or assistant. Salaries shall be paid twice in each month on regular days not more than sixteen days apart. All state or county officers, employees, members of boards and commissions not mentioned in this chapter, and all deputies, stenographers, clerks and employees of any officer, board or commission, or of any institution, shall receive the salary provided by the laws creating or authorizing their respective positions, and shall not, under any pretext, receive any salary or emolument in excess of the salary so provided by law."

Manifestly sections 4876 and 4877 apply to all classes of employees working under contract, and section 2799 applies to public officers, and since plaintiff's whole case is founded on sections 4876 and 4877, which have no application, it necessarily fails, for that reason alone.

However, if by any reasonable construction those sections relied upon by plaintiff could be held to apply to the salaries and wages of public officers, they do not provide that such salaries or wages shall have a preference in regard to time of payment, but they shall be paid on the regular pay days in cash or bankable paper, and this requirement is, of course, conditioned upon the state's having funds available for that purpose. Section 9 of article 5 of the Constitution of Arizona provides as follows:

"The powers and duties of Secretary of State, State Treasurer, State Auditor, Attorney-General, and Superintendent of Public Instruction shall be as prescribed by law."

Section 5 of article 9 of the state Constitution reads in part as follows:

" . . . No money shall be paid out of the State treasury, except in the manner provided by law."

Subsection 5 of section 44, Revised Code of Arizona 1928, relating to the duties of the state treasurer, provides as follows:

"Pay warrants drawn by the state auditor in the order in which they are presented, and take upon the back thereof the receipt of the person to whom it is paid, and file and preserve the same."

Section 47, Revised Code of Arizona 1928, prescribes the duty of the state treasurer relative to the payment of warrants in the following language:

"47. *Payment of Warrants, Interest Where No Funds.* All state warrants shall be paid by the treasurer, in the order of their presentation, if drawn in accordance with law. If, upon presentation to the treasurer of any warrant, he has not the funds in hand to pay the same, he shall indorse the day of its presentation upon the back of the warrant, and whenever it is paid, interest shall be allowed from said day, and paid out of the general fund, in addition to the principal thereof; provided, the loan commissioner shall fix and change, from time to time, the

rate of interest to be paid on said warrants, not exceeding five per cent. per annum."

The provisions of our law as quoted above make no distinctions between salary warrants and other warrants issued in connection with and incident to the various governmental functions and they constitute a direct mandate to the state treasurer that he shall pay warrants drawn by the state auditor upon the general fund, in the order of their presentation.

The $350,000 in cash in the state treasury was therefore not available, under the law, for the payment of the warrant of plaintiff when such payment was demanded by him, for the very obvious reason that registered warrants amounting to $2,500,000 were awaiting payment ahead of him, in conformity with section 47, *supra,* providing that warrants "shall be paid by the treasurer, in the order of their presentation."

The alternative writ of *mandamus* is quashed and the application of plaintiff for a peremptory writ of *mandamus* is denied.

ROSS, C. J., and McALISTER, J., concur.

NOTE.—The Honorable Justice ALFRED C. LOCKWOOD being unable by reason of illness to be present upon this hearing, the Honorable G. A. RODGERS, Judge of the Superior Court of Maricopa County, was called in to sit in his stead.